```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
WELLS FARGO BANK, NATIONAL ASSOCIATION  :      19cv47(DLC)
AS TRUSTEE FOR THE REGISTERED HOLDERS   :      19cv471(DLC)
OF JPMBB COMMERCIAL MORTGAGE SECURITIES :
TRUST 2014-C26, COMMERCIAL MORTGAGE     :      OPINION AND ORDER
PASS-THROUGH CERTIFICATES, SERIES 2014- :
C26,                                    :
                                        :
                      Plaintiff,        :
              -v-                       :
                                        :
MOHAMMAD NASR,                          :
                                        :
                      Defendant.        :
----------------------------------------X
                                        :
ANNALY CRE HOLDINGS LLC,                :
                                        :
                      Plaintiff,        :
              -v-                       :
                                        :
MOHAMMAD NASR,                          :
                                        :
                      Defendant.        :
----------------------------------------X
```

APPEARANCES

For plaintiff Wells Fargo Bank:
Bruce J. Zabarauskas
Christopher L. Chauvin
Thompson & Knight LLP
900 Third Avenue, 20th Floor
New York, New York 10022
(212) 751-3000

For plaintiff Annaly CRE Holdings LLC:
William S. Gyves
Randall L. Morrison, Jr.
Kelley Drye & Warren LLP
101 Park Avenue
New York, New York 10178
(212) 808-7800

For defendant:
Vera M. Kachnowski
Jeffrey M. Eilender
Schlam Stone & Dolan LLP
26 Broadway
New York, New York 10004
(212) 344-5400

DENISE COTE, District Judge:

Plaintiffs Wells Fargo Bank ("Wells Fargo") and Annaly CRE
Holdings LLC ("Annaly") bring these breach of contract actions
to enforce a guaranty agreement ("Guaranty") issued by defendant
Mohammad Nasr ("Nasr") in connection with two loans -- a $52
million mortgage loan ("Mortgage Loan") and a $7 million
mezzanine loan ("Mezzanine Loan") -- originally made by JPMorgan
Chase Bank, N.A ("JPMorgan").  The Guaranty irrevocably and
unconditionally guarantees to JPMorgan "and its successors and
assigns" the payment and performance of the obligations under
each of the two loans.

According to the plaintiffs, JPMorgan assigned the Mortgage
and Mezzanine Loans to Wells Fargo and Annaly, respectively, in
December 2014.  They move for summary judgment or judgment on
the pleadings as to Nasr's liability under the Guaranty.  Nasr
does not dispute the existence of the Guaranty, plaintiffs'
interpretation of its principal terms,[1] or the existence of an

---

[1] Nasr asserts that the Guaranty, as with other documents cited
by the plaintiffs, "speaks for itself."

underlying debt on the Mortgage and Mezzanine Loans.[2]  He
principally opposes the motions on the grounds that neither
Wells Fargo nor Annaly have produced evidence demonstrating that
they currently hold the loans that underlie their breach of
contract claims.  Nasr's contention is unavailing.  For the
reasons that follow, Wells Fargo and Annaly are entitled to
judgment as to Nasr's liability under the Guaranty.

## Background

The following facts are taken from the plaintiffs'
complaints, documents integral to those complaints, and
documents submitted in connection with Wells Fargo's motion for
summary judgment.  They are undisputed unless otherwise noted.

Nasr is the president of the general partner of L Reit Ltd.
("L Reit"), a special purpose entity that owns certain real
property ("Property") in Houstin Texas.[3]  Nasr also holds
substantial ownership interests and control rights in Beltway 7
Properties, Ltd. ("Beltway 7").[4]

---

[2] Nasr disputes the amount of damages under the loans.  Because
plaintiffs move for judgment as to liability only, this dispute
does not give rise to a genuine dispute of material fact.

[3] L Reit is also referred to as the "Borrower" or "Mortgage
Borrower" in some of the cited loan documents.

[4] Beltway 7 is also referred to as the "Borrower" or "Mezzanine
Borrower" in some of the cited loan documents.

The Loans

In 2012, JPMorgan issued a loan to L Reit in the amount of $52 million.  On November 14, 2014, L Reit refinanced the $52 million loan through two new loans with JPMorgan:  a $52 million Mortgage Loan made to L Reit and a $7 million Mezzanine Loan made to Beltway 7.  The Mortgage and Mezzanine Loans are evidenced by, among other things, promissory notes ("Notes") and loan agreements ("Loan Agreements").[5]  Each Note provides that "[a]ll of the terms, covenants and conditions contained in the Loan Agreement . . . are hereby made part of this Note to the same extent and with the same force as if they were fully set forth herein."  Nasr signed the Notes and the Loan Agreements on behalf of L Reit and Beltway 7.

The Mortgage Loan is secured by, among other things, a deed of trust ("Deed of Trust") dated November 14, 2014.  The Deed of Trust granted JPMorgan a lien on and security interest in, inter alia, the Property, leases and rents from the Property, and any personal property and equipment then owned or thereafter acquired by L Reit.

Article VIII of the Loan Agreements describe circumstances that constitute an event of default on the loans.  Section

---

[5] Unless otherwise noted, the cited language in the Notes and the Loan Agreements is the same for both the Mortgage and Mezzanine Loans.

8.1(a)(iv) provides that it shall constitute a default if the borrower "Transfers or otherwise encumbers any portion of the Property without Lender's prior written consent."  The Loan Agreements define "Transfer" to include, among other things, any sale, conveyance, mortgage, encumbrance, or pledge.  Section 8.1(a)(vii) also provides that it shall be an event of default "if any petition for bankruptcy . . . shall be filed by . . . Borrower."

The Notes and the Loan Agreements provide that an event of default shall automatically and immediately accelerate all amounts due under the Mortgage and Mezzanine Loans.  Article 2 of the Notes provides, for example, that "[t]he Debt shall without notice become immediately due and payable at the option of the Lender if any payment required in this Note is not paid . . . on the happening of any . . . Event of Default."  In addition, Section 9.3 of the Loan Agreements provides that "the Debt shall be fully recourse to Borrower" upon the occurrence of any of the following events: (i) Borrower's "filing a voluntary petition under the Bankruptcy Code," (ii) Borrower's "fail[ure] to obtain the Lender's prior written consent to any Indebtedness or voluntary Lien encumbering the Property," or (iii) Borrower's "fail[ure] to obtain Lender's prior consent to any Transfer," as defined above.

The Guaranty

As a condition of JPMorgan's willingness to refinance the original $52 million loan, Nasr executed in his individual capacity the Guaranty, dated November 14, 2014.  Under the terms of the Guaranty, Nasr agreed to guarantee performance of the underlying loans according to the Notes and Loan Agreements. Section 1.1 of the Guaranty provides:

> Guarantor hereby irrevocably and unconditionally guarantees to Lender and its successors and assigns the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise.  Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor.

Under the terms of the Guaranty, the Lender is not required to exhaust alternative remedies prior to enforcing the Guaranty.  Following a breach of the underlying loans, the Guarantor must pay and perform his obligations within five days of written demand by the Lender.

As set forth in Section 1.3, "Th[e] Guaranty may be enforced by Lender and any subsequent holder of the Note and shall not be discharged by the assignment or negotiation of all or part of the Note."  In the event the Guarantor fails to perform any obligations in the Guaranty, the Guarantor shall be liable for all costs and expenses

(including attorney's fees) incurred by Lender in the enforcement of the Guaranty.

Assignment of the Notes

Effective December 29, 2014, JPMorgan assigned the Deed of Trust, which it held as security for the Mortgage Loan, to Wells Fargo. The agreement ("Mortgage Loan Assignment") assigned to Wells Fargo all of JPMorgan's "right, title, and interest" in the Deed of Trust, "[t]ogether with any and all notes and obligations therein described, the debt and claims secured thereby and all sums of money due and to become due thereon, with interest provided for therein." The Mortgage Loan Assignment was recorded in the Harris County Clerk's Office on February 4, 2015.

Effective December 31, 2014, JPMorgan assigned the Mezzanine Loan to Annaly through an assignment and assumption agreement ("Mezzanine Loan Assignment").[6] Under the terms of the Mezzanine Loan Assignment, JPMorgan agreed to "irrevocably sell[], assign[], transfer[] and deliver[] unto Annaly CRE Holdings LLC . . . all of the Assignor's right, title and

---

[6] This document may be considered on a motion for judgment on the pleadings because it is integral to the complaint. Here, as in "most instances" where courts have considered a document "integral to the complaint," "the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls . . . ." Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (citation omitted).

interest in (a) the Mezzanine Promissory Note . . ., [and] (b) the Mezzanine Loan Agreement . . . ."

Events of Default

On or about February 26, 2018, L Reit granted a second deed of trust on the Property to Icon Bank of Texas, N.A. ("Icon Bank Deed of Trust").  The Icon Bank Deed of Trust was recorded in the Harris County Clerk's Office on March 1, 2018.  L Reit did not obtain the written consent of Wells Fargo prior to issuing the Icon Bank Deed of Trust.  On December 5, 2018, both L Reit and Beltway 7 filed voluntary bankruptcy petitions with the U.S. Bankruptcy Court for the Southern District of Texas.

On December 21, 2018, Wells Fargo sent to Nasr via Federal Express and certified mail a notice of default on the Guaranty. The letter indicated that Nasr had breached the Loan Agreement "by granting a second lien on the Property to Icon Bank" and by "fil[ing for] bankruptcy."  It demanded "immediate payment of the entire amount that remains due and owing" on the Mortgage Loan.  On January 4, 2019, Annaly sent a similar notice of default and "formal demand under the Guaranty for [Nasr's] immediate payment by January 8, 2019 of the entire amount currently due and owing" on the Mezzanine Loan.  As of the filing of the Wells Fargo and Annaly complaints on January 2 and January 16, 2019, respectively, the balance on the Mortgage and Mezzanine Loans remains outstanding.

8

## Discussion

The standards for reviewing a motion for summary judgment and a motion for judgment on the pleadings are well established. A motion for summary judgment may not be granted unless all of the submissions taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 113 (2d Cir. 2017) (citation omitted). The moving party bears the burden of demonstrating the absence of a material factual question. Gemmink v. Jay Peak Inc., 807 F.3d 46, 48 (2d Cir. 2015). In making this determination, the court must "view the evidence in the light most favorable to the party opposing summary judgment" and "draw all reasonable inferences in favor of that party." Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996).

Once the moving party has asserted facts showing that the non-movant's claims or affirmative defenses cannot be sustained, the party opposing summary judgment "must set forth specific facts demonstrating that there is a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (citation omitted). "[C]onclusory statements, conjecture, and

inadmissible evidence are insufficient to defeat summary judgment," Ridinger v. Dow Jones & Co. Inc., 651 F.3d 309, 317 (2d Cir. 2011) (citation omitted), as is "mere speculation or conjecture as to the true nature of the facts." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes over material facts will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In deciding a motion for judgment on the pleadings pursuant to Rule 12(c), Fed. R. Civ. P., courts "apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." Mantena v. Johnson, 809 F.3d 721, 727-28 (2d Cir. 2015) (citation omitted). "On a 12(c) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011) (citation omitted). "A complaint is also deemed to include any written instrument attached to it as an exhibit, materials incorporated by reference, and documents that, although not incorporated by reference, are integral to the complaint." Id. (citation omitted). "A document is integral to the complaint where the

complaint relies heavily upon its terms and effect." Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (citation omitted); see also Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000) (deeming complaint to include "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit").

Under New York law,[7] guaranty agreements are to be construed according to "ordinary principles of contract construction." Cooperatieve Centrale Faiffeisen-Boerenleenbank, B.A v. Navarro, 25 N.Y.3d 485, 492 (2015) (citation omitted).  If the intent of the parties is clear from the four corners of a guaranty, its interpretation is a matter of law that the court may determine by summary judgment.  Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 316 (2d Cir. 2006). Although guaranty agreements are construed strictissimi juris, "a surety is not entitled to any particular tenderness in the interpretation of the language of his contract."  Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc., 188 F.3d 31, 34 (2d Cir. 1999) (citation omitted).  To prevail on motion for summary judgment on an unconditional written guaranty, a creditor need only prove "the existence of the guaranty, the underlying debt and the

---

[7] Section 5.3 of the Guaranty provides that it shall be governed by and construed in accordance with New York law.

guarantor's failure to perform under the guaranty."
Cooperatieve Centrale, 25 N.Y.3d at 492 (citation omitted); see
also Davimos v. Halle, 826 N.Y.S.2d 61, 62 (App. Div. 1st Dep't
2006).

Wells Fargo and Annaly are entitled to judgment as to
Nasr's liability under the Guaranty.  Nasr does not dispute the
existence of the Guaranty or the fact that there is an
underlying debt on the Mortgage and Mezzanine Loans.  The
Guaranty is, by its unambiguous terms, an "irrevocabl[e] and
unconditional[] guarantee[]" of payment and performance of the
Mortgage and Mezzanine Loans.  The Guaranty is enforceable under
New York law.  Cooperative Centrale, 25 N.Y.3d at 493
("[G]uarantees that are 'absolute and unconditional[]' have been
consistently upheld by New York courts.").

Nasr has failed to perform his obligations under the
Guaranty.  Under Section 1.1 of the Guaranty, Nasr guaranteed
payment and performance of the obligations under the Mortgage
and Mezzanine Loans "when the same shall be due and payable,
whether by . . . acceleration of maturity or otherwise."  The
Notes and Loan Agreements issued in connection with the Mortgage
and Mezzanine Loans provide that it shall be an event of default
for L Reit or Beltway 7 to mortgage or encumber the Property
without the noteholder's prior written consent.  They also
provide that it shall be an event of default if L Reit or

Beltway 7 files a voluntary petition for bankruptcy.  It is
undisputed that on February 26, 2018, L Reit granted a second
deed of trust on the Property without the prior written consent
of Wells Fargo.  It is also undisputed that, on December 5,
2018, L Reit and Beltway 7 filed voluntary petitions for
bankruptcy.  Accordingly, under Article 2 of the Notes and
Section 9.3 of the Loan Agreements, the outstanding debts on the
Mortgage and Mezzanine Loans became immediately due and payable.
Notwithstanding plaintiffs' written demands, Nasr does not
contest that an outstanding balance remains on each of the
loans.

Nasr's principal argument in opposition to the instant
motions is that neither Wells Fargo nor Annaly have standing to
enforce the Guaranty because they have not met their burden to
establish that they are the respective holders of the Mortgage
and Mezzanine Loans.  With respect to the Mortgage Loan, Nasr
asserts that Wells Fargo has not submitted an allonge or
endorsement to the Note demonstrating that it is the current
noteholder.  With respect to the Mezzanine Loan, he contends
that judgment on the pleadings is not appropriate because, in
his answer, Nasr denied knowledge or information sufficient to
form a belief as to whether Annaly is the current holder of the
Mezzanine Loan.  Nasr also asserts that Annaly has not submitted
-- "with either its complaint or this motion" -- "an assignment

agreement, note endorsement, or any other proof that it is the current holder of the mezzanine loan and promissory note." These arguments are meritless.

The Mortgage Loan Assignment, submitted in connection with Wells Fargo's motion for summary judgment, assigned to Wells Fargo not only the Deed of Trust but also "all notes and obligations therein described, the debt and claims secured thereby, and all sums of money due and to become due thereon . . . ." The Deed of Trust was signed by Nasr and executed concurrently with the Mortgage Loan as security for "that certain Promissory Note, dated the date hereof, made by [L Reit] in favor of [JPMorgan]" in the amount of $52 million. Nasr does not contest the validity of the Mortgage Loan Assignment. Instead he asserts -- in a conclusory manner and without a single citation to case law -- that some other document is necessary under New York law to evidence the assignment. It is not. E.g., Wells Fargo Bank, N.A. v. Walker, 35 N.Y.S.3d 591, 593-94 (App. Div. 3d Dep't 2016) (finding assignment valid where agreement "convey[ed] the mortgage 'together with the bond or note or obligation described in said mortgage'"); In re Stralem, 758 N.Y.S.2d 345, 347-48 (App. Div. 2d Dep't 2003) (same).

Likewise, Annaly has produced evidence sufficient to demonstrate that it is the current holder of the Mezzanine Loan. It has produced, for example, the Mezzanine Loan Assignment, in

14

which JPMorgan assigned to Annaly the entirety of its "right, title, and interest in . . . the Mezzanine Promissory Note . . . ."  Annaly has also produced an allonge effective December 31, 2014, assigning payment of the Mezzanine Loan to Annaly.  Each document is sufficient evidence of a valid assignment under New York law.  See, e.g., OneWest Bank, N.A. v. Melina, 827 F.3d 214, 222-23 (written assignment of underlying note); Deutsche Bank Trust Co. Ams. v. Codio, 943 N.Y.S.2d 545, 546 (App. Div. 2d Dep't 2012) (allonge to note).  Although these documents were for some reason not attached to Annaly's complaint, they are integral to the complaint's allegation that Annaly "is the current holder of the [Mezzanine] Loan" and therefore appropriate to consider in connection with Annaly's motion for judgment on the pleadings.  See Goel, 820 F.3d at 559.  Nasr's assertion that Annaly has not submitted documents sufficient to evidence an assignment is baseless.

### Conclusion

Wells Fargo's March 5 motion for summary judgment and Annaly's March 14 motion for judgment on the pleadings are granted.


Dated:   New York, New York
         May 10, 2019

_____
DENISE COTE
United States District Judge

15